UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY, | ) |
| Plaintiff/Counter-Defendant, | ) 20 C 6878 |
| vs. | ) Judge Gary Feinerman |
| POWER CLEAN, INC., | ) |
| Defendant/Counter-Plaintiff. | ) |

**MEMORANDUM OPINION AND ORDER**

Ohio Security Insurance Company seeks a declaratory judgment that it has no duty to defend or to indemnify its insured, Power Clean, Inc., in connection with claims asserted in *Plote Construction Inc. v. Power Clean, Inc.*, Case No. 2019 L 1320 (Cir. Ct. DuPage Cnty., Ill.). Doc. 1. Power Clean counterclaims for a declaration that Ohio Security owes it those duties and for damages due to Ohio Security's alleged breach thereof. Doc. 11 at pp. 13-16. Before the court are Ohio Security's motion under Rule 12(c) for judgment on the pleadings, Doc. 16, and Power Clean's motion under Rule 56 for summary judgment as to liability, Doc. 17. As to the duty to defend, Power Clean's motion is granted and Ohio Security's is denied, and as to the duty to indemnify, the court denies without prejudice both motions.

**Background**

Because summary judgment will be granted to Power Clean, the court recites the facts as favorably to Ohio Security as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019). That said, the pertinent facts are undisputed. Doc. 16 at 1.

1

A.   **The Underlying Suit**

In the underlying suit, Plote Construction alleges that it entered a written contract with Power Clean to "clean and seal certain sidewalks" in Algonquin, Illinois. Doc. 1-1 at p. 3, ¶ 6. The contract defined Power Clean's "scope of work" as including "silane sealer on … sdwk" and "seal colored & stamped conc." *Id*. at 8, 14 (capitalization normalized). Plote alleges that Power Clean breached the contract by "providing defective sealant materials and/or failing to properly apply the sealant to the sidewalk, … caus[ing] damage to, and the loss of use of, the preexisting sidewalk." *Id*. at p. 3, ¶¶ 9-10. Plote further alleges that it "was forced to hire another contractor to remove the sealer applied by Power Clean and reseal the sidewalk" and "incurred additional equipment and supervision costs associated with the resealing of the sidewalk … ." *Id*. at p. 3, ¶¶ 11-12. Plote seeks damages in the amount of $214,877.01. *Id*. at p. 3, ¶ 13.

B.   **Ohio Security's Policy**

Ohio Security issued Power Clean the Commercial General Liability ("CGL") policy that covers the relevant period. Doc. 16 at 3. The policy provides in relevant part:

> [Ohio Security] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Doc. 1-2 at 20. The policy covers "property damage" only if it is caused by an "occurrence." *Ibid*. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 35.

## Discussion

The parties agree that the policy is governed by Illinois law. Doc. 16 at 5-6; Doc. 19 at 2-3; *see McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998) ("Because this

is a diversity case, we look to state law to provide the substantive law regarding interpretation of the insurance policy."). The Seventh Circuit has summarized Illinois law governing the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted).

As noted, the policy provides that Ohio Security "will have the right and duty to defend [Power Clean] against any 'suit' seeking" monetary damages arising from "property damage." Doc. 1-2 at 20. Illinois law broadly construes such duty-to-defend provisions: "An insurer's duty to defend is broader than its duty to indemnify. To determine whether an insurer has a duty to defend, a court compares the underlying complaint's allegations (liberally construed in the insured's favor) to the policy's language. If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020) (internal citations and quotations marks omitted). "An insurer can only refuse to defend if the allegations of the underlying complaint preclude any possibility of coverage. An insurer must defend when the underlying allegations do not foreclose coverage." *Ibid.* (internal citations and quotation marks omitted). Put another way, "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that

3

bring the case within or potentially within the insured's policy coverage." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005) (citation omitted). "Any doubts about the duty to defend are resolved in favor of the insured." *Scottsdale Ins. Co.*, 972 F.3d at 919.

Illinois law governing the application of these principles in the context of defective construction or maintenance suits are settled: "Where the underlying suit alleges damage to the construction project *itself* because of a construction defect, there is no coverage. By contrast, where the complaint alleges that a construction defect damaged something *other* than the project, coverage exists." *Lagestee-Mulder, Inc. v. Consol. Ins. Co.*, 682 F.3d 1054, 1057 (7th Cir. 2012) (internal citations omitted). Put another way, for there to be coverage, there must be "damage to other materials not furnished by the insured." *Pekin Ins. Co. v. Richard Marker Assocs., Inc.*, 682 N.E.2d 362, 365 (Ill. App. 1997) (quoted in *Lagestee-Mulder*, 682 F.3d at 1057). Thus, the dispositive question here is whether Plote's complaint, liberally construed in Power Clean's favor for purposes of ascertaining coverage, alleges that Power Clean caused damage to something beyond Power Clean's scope of work. *See Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 697 (7th Cir. 2017) ("[D]amage to something other than the project itself does constitute an 'occurrence' under a CGL policy.") (quotation marks and citation omitted).

The answer to that question is yes. The underlying complaint alleges that "Plote entered into a written contract with Power Clean" under which "Power Clean agreed to clean and seal certain sidewalks." Doc. 1-1 at p. 23, ¶¶ 5-6; *see id*. at p. 14 (describing the "[s]cope of work" as "silane sealer on pcc sdwk" and "seal colored & stamped conc") (capitalization omitted). The complaint further alleges that "Power Clean breached the [c]ontract by providing defective

4

sealant materials and/or by failing to properly apply the sealant to the sidewalk." *Id*. at p. 3, ¶ 9. And, crucially, the complaint alleges not only that "Plote was forced to hire another contractor to remove the sealer applied by Power Clean and reseal the sidewalk," *id*. at 3, ¶ 11, but also that "Power Clean caused damage to … the *preexisting* sidewalk," *id*. at 3, ¶ 10 (emphasis added).

Because Power Clean's scope of work was limited to cleaning and sealing sidewalks that already existed—and not installing the sidewalks themselves—and because the underlying complaint alleges damage to the preexisting sidewalk, the best reading of the complaint is that it alleges that Power Clean "damaged something *other* than the project," *Lagestee-Mulder*, 682 F.3d at 1057, meaning "other materials not furnished by" Power Clean, *Richard Marker Assocs.*, 682 N.E.2d at 365. At a minimum, it cannot be said that it is "clear from the face of the underlying complaint that the allegations set forth in that complaint fail to" allege damage to something beyond Power Clean's scope of work and thus "within or potentially within [Power Clean's] policy coverage." *Midwest Sporting Goods*, 828 N.E.2d at 1098. It follows under Illinois law that the underlying suit triggers Ohio Security's duty to defend. *See Nat'l Decorating Serv.*, 863 F.3d at 697-98 (holding that there was coverage because the underlying complaint alleged that the insured, which contracted to paint the exterior of a building, performed work that ultimately caused damage to the building's interior due to its having applied "an insufficient amount of paint"); *Ohio Cas. Ins. Co. v. Bazzi Const. Co.*, 815 F.2d 1146, 1148 (7th Cir. 1987) (Illinois law) (holding that there was coverage because the underlying complaint alleged that the insured, a contractor hired to remodel a garage, performed work that ultimately caused "damage to the structure of a building already in existence").

As Ohio Security has a duty to defend Power Clean under the policy, there is no need to address Power Clean's submission that Ohio Security waived its right to deny coverage or is

5

estopped from doing so. Doc. 19 at 7-15; Doc. 31 at 7-9. Also, because the underlying suit remains pending, it would be premature at this point to resolve whether Ohio Security must indemnify Power Clean for any judgment that might be entered or settlement that might be reached in that suit. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established.") (citing cases).

## Conclusion

On the question whether Ohio Security owes Power Clean a duty to defend, Power Clean's summary judgment motion is granted and Ohio Security's Rule 12(c) motion is denied. On the question whether Ohio Security owes Power Clean a duty to indemnify, both motions are denied without prejudice. Insofar as Ohio Security's claims and Power Clean's counterclaim concern the duty to indemnify, they are dismissed without prejudice to refiling once the underlying suit concludes. *See Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 331-32 (7th Cir. 2021) (directing the district court "to … dismiss[], without prejudice, as premature at this stage," claims regarding the insurer's duty to indemnify the insured in the still-pending underlying suit).

January 24, 2022

_____
United States District Judge